ECLIPSE WINDMILL CO. *v.* WOODMANSE WINDMILL CO. and others.

*(Circuit Court, N. D. Illinois.  July 27, 1885.)*

1. PATENTS FOR INVENTION—ECLIPSE WINDMILL—NOVELTY—INFRINGEMENT.
    Reissued patent No. 9,493, issued December 7, 1880, to William H. Wheeler, and reissue No. 6,101, granted to E. & D. C. Stover, on October 27, 1884, for improvements in windmills, *held* not void for want of novelty, and claim 1 of No. 9,493, and claims 3, 4, 5, and 6 of 6,101, infringed by the mill manufactured and sold by the Woodmanse Windmill Company.

2. SAME—LICENSE NOT TRANSFERABLE.
    A license by a patentee to use his invention is personal to the licensee, and not transferable to a third party.

In Equity.

*Hill & Dixon,* for complainant.

*Coburn & Thatcher,* for defendant.

BLODGETT, J.   This is a bill to restrain an alleged infringement, and for an accounting, as to reissued letters patent No. 9,493, dated December 7, 1880, issued to the complainant as assignee of William H. Wheeler, the original patent having been granted to William H. Wheeler, October 20, 1874, for "an improvement in windmills;" and also as to reissued letters patent No. 6,101, granted to E. & D. C. Stover on October 27, 1884, the original patent having been granted to said parties on December 3, 1872, for an improvement in windmills; the infringement being charged as to the first claim of patent No. 9,493, and the third, fourth, fifth, and sixth claims of patent No. 6,101.   The defenses interposed are:  (1) That the patents in question are void for want of novelty;  (2) that the defendants do not infringe;  (3) that the defendants are using the said patents by the license and authority of complainants and the original patentees.

The main controversy is as to the validity of reissued patent No. 9,493.   Both the inventions in question are devices applicable to that class of windmills in which a flexible tail-vane or rudder is employed to carry the wind-wheel more or less out of the wind, as the velocity increases or diminishes, for the purpose of maintaining the mill at a uniform rate of speed, or of stopping its motion entirely; and the Wheeler device consists of a weighted arm arranged at one side of the vertical or horizontal axis of the windmill, for the purpose of counteracting the lateral strain on the vertical axis of the wind-wheel, when the latter is carried obliquely to the wind, and in increasing the force of the counterbalancing weight in proportion as the strain upon the vertical axis of the windmill is increased; or, as it is now popularly known and described in the art, a counterbalancing weight of varying resistance.   In all windmills in which a flexible tail-vane or rudder is employed, by means of which the wind-wheel is turned out of the wind, some mode of initiating the turning of the wheel from its direct front to the wind, so as to carry it around out of the wind, has been found necessary; and in the first practical windmill of this

kind which was constructed, this initial motion was obtained by a side vane which caused a heavier pressure of the wind upon one side of the wheel than was received upon the other, whereby, when the wind reached a certain pressure or velocity, the wheel would swing laterally around so as to bring itself parallel to the wind. The operation of this device was unsatisfactory, for the reason that the side vane operated too abruptly, and frequently swung the wheel entirely out of the wind, when it was not desirable to do so, but was rather desirable to swing it only partly out of the wind, so as to relieve the wheel of a portion of the pressure; and the Wheeler device, now in question, consisted of the arrangement of a lever, weighted at the extreme end, and so fixed to the operative parts of the device as that, when at rest, and when the wheel faced the wind, the lever hung suspended with the weight at its lower end, but when the wheel commenced to swing out of the wind, the lever began to rise in the arc of a circle from a vertical to a horizontal position, and, as it so raised, the weight at its further end, by its increasing leverage, as it swung in the arc, increased the resistance to the swinging of the wheel, and therefore resisted, or prevented, the entire swinging of the wheel out of the wind, unless the pressure of the wind increased. The main feature of the Stover device consists in adjusting the wind-wheel at an angle to its axis, and to the line of the jointed tail-vane, so that the wheel could itself, on an increase of the wind, initiate its own swinging motion out of the wind; and the various claims of the Stover patent, charged to be infringed, have reference to this feature.

A large number of prior patents for windmill devices are cited as anticipating the devices covered by these two patents, but, after a careful examination of them, I do not find that they can be said to anticipate either of the devices covered by the complainant's patents. Many, if not all of them, show weights, but they are not weights which are so arranged or adjusted as to increase the resistance as the wheel moved away from the wind, or diminish it as the wheel swung back to face the wind. I feel compelled to say, after a careful examination of the arguments of counsel, and the various illustrations presented, that it seems to me the proof is full and satisfactory to the point that William H. Wheeler was the first to apply to a practical wind-wheel the idea of a weight of varying resistance to regulate the swinging of the wheel out of or into the wind; and that the Stover patent was the first to show the mode of initiating the swinging of the wheel out of the wind, in wind-wheels, where the jointed tail-vane was used, by setting the wheel at an angle with its own axis. I must therefore find that the defense of want of novelty is not sustained by the proof.

As to the question of infringement, there can be no doubt that the defendant's device is not only a weight of varying resistance, but it is so nearly the exact counterpart of that of the Wheeler device as to hardly have any other feature than a mere mechanical change. Whatever there is in it different from that of the complainant's device

covered by the Wheeler patent is merely mechanical, and not such a change as evades contribution to the owners of the Wheeler patent. The proof also shows that the defendant sets its wind-wheel at an angle with the line of the tail-vane for the purpose of initiating the swinging out of the wind, instead of using the side vane, or any other device, to accomplish that purpose.

As to the claim that the defendant is using the device in question by the license of the complainant, or the original patentees, it appears from the proof that about September 11, 1874, the Eclipse Windmill Company, complainant in this case, was carrying on business as a manufacturer of windmills at Beloit, Wisconsin. E. & D. C. Stover were carrying on the same business at Freeport, in this state, and Harrison Woodmanse was also engaged in the same manufacture at Freeport. The Stovers were patentees and owners of certain patents pertaining to windmills, and had given a license to Mr. Woodmanse to use their patents in his business. William H. Wheeler had an application pending before the patent-office for a patent for his device, covered by the patent of October 20, 1874; and the Stovers had also pending before the patent-office an application for a patent on a kindred device, and an interference had been declared between them. On the eleventh of September an agreement was made by which the Stovers admitted that Wheeler was the prior inventor of the device covered by his application, and a settlement of the controversy involved in the interference was made between the parties. At the same time a license was issued by Wheeler to the Stovers, authorizing the use by them and their licensees of the device covered by his application for the patent now in question, which license was confirmed by Wheeler after the issue of his patent; and about September 22, 1874, a large number of windmill manufacturers, among whom were the Eclipse Windmill Company, William H. Wheeler, Harrison Woodmanse, and the Stovers, formed an association for the purpose of protecting the windmill interests and patents in which they were respectively interested, by which it was agreed that each party to or member of the association might use so much of the patents owned by the other members as was necessary in building their respective mills as then constructed, so long as the association should continue in existence. It is conceded that the license of the Stovers to Harrison Woodmanse was not in force at the time this suit was commenced, nor at the time of the infringement now complained of. The proof also shows that the present corporation, the Woodmanse Windmill Company, was organized about June, 1881, and that the only color of authority or license that said corporation has for using the patent in question is an assignment from Harrison Woodmanse to said corporation of all his right to use said patent.

The proof also shows that while the Windmill Protective Association, formed in September, 1874, may still have a nominal existence, yet a large number of its members, including Wheeler and the pres-

ent complainant, withdrew therefrom several years since, and the association can hardly be said now to continue in existence as it was at the time the agreement for interchangeable use of the patents of the respective members was made. But, without reference to that question, I think it is sufficient to say that the law is well established that a license by a patentee is personal to the licensee, and not transferable, and that Harrison Woodmanse could not clothe the present defendant with any authority to use the patents in question by virtue of his membership in the Windmill Protective Association. *Troy Iron & Nail Factory* v. *Corning*, 14 How. 216; Curt. Pat. § 213.

The bill in this case charged the infringement by defendants of several other patents besides the ones which I have considered, but, upon the hearing, all the infringements charged were abandoned except the two patents now mentioned. No question can arise as to the validity of the reissue of this patent, because the claims alleged to be infringed in this case are the same as the claims in the original patent. The court therefore finds that the defendants have infringed the first claim of reissued patent No. 9,493, and the third, fourth, fifth, and sixth claims of reissued patent No. 6,101, and a reference to a master will be ordered to take an account of the damages; and the bill is dismissed for want of equity as to the other patents mentioned therein.